IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

BLD REALTY INC.

Debtor

CASE NO. 22-00802 (MCF)

CHAPTER 11

BLD REALTY INC.

Plaintiff

v.

PERFECT PRICE INC.; PERFECTO RIVERA IZQUIERDO; LATIN INVESTMENT CORP.; RAMON CLAS VAZQUEZ; MICHAEL A. PABON RIVERA; PRODUCTOS LA PERFECTA, CORP.; JOHN DOE 1-5

Defendants

ADVERSARY CASE NO. 22-00034

## OPINION AND ORDER

The plaintiff, BLD Realty, Inc., is a subchapter V debtor. It filed a ten-count adversary complaint against the defendants. BLD seeks a declaratory judgment that the two real properties that it lost through a foreclosure proceeding on the eve of its filing for bankruptcy are property of the estate including the rents owed to it by the tenants of these properties. BLD claims that the automatic stay has been violated, that it has suffered damages, and that it is entitled to avoid the foreclosure sale of the two properties. BLD alleges that the defendants employed deceitful tactics to bleed it dry of resources and force it into a foreclosure sale that resulted in the tenants transferring the properties to themselves. As such, BLD seeks a determination from this court that such transfer was fraudulent, that it is tortious under state law and that the corporate defendants' veils be pierced.

-1-

The defendants move to dismiss the complaint. Docket No. 45. The defendants allege that when the bankruptcy petition was filed, BLD had lost all proprietary interest over the two properties that were sold to co-defendant Latin Investment, Corp., at a judicial sale after the local court had approved the foreclosure of the two properties. Id. at 12. The defendants argue that the pre-petition judicial sale did not violate the automatic stay because BLD lost its proprietary interest in the properties, even though the local court entered an order post-petition, confirming the judicial sale. Id. at 12-13. The defendants posit that BLD cannot exercise a preference action because it will be unable to establish that Latin Investment would receive more than it would if the case were a case under chapter 7, given that Latin Investment had a lien over the two properties. Id. at 14. The defendants contend that they are not tortfeasors for purchasing the right to foreclose on the security interest. Id. at 19. Regarding the fraudulent transfers and piercing of the corporate veil, the defendants state that fraud must be plead with particularity and that BLD cannot establish that through the judicial sale they received less than a reasonably equivalent value in exchange for such transfer. Id. at 16, 20 & 21.

## I.      Motion to Dismiss Under Rule 12(b)(6) Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted tests the formal sufficiency of the plaintiff's statement of its claim for relief in its complaint. Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A court may dismiss for failure to state a claim only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory. Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992). The court must deem the facts alleged in the complaint as admitted and it must analyze if based on those facts the plaintiff has a right to any relief. Crow v. Henry, 43 F.3d 198, 203 (5th Cir. 1995). In examining all well-pleaded facts, the court considers them as true and draws all reasonable inferences in favor of the plaintiff. Estate of Soler v. Rodriguez, 63 F.3d 45, 53 (1st Cir. 1995). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff will be able to offer evidence to support its claims. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000); Gorski v. New Hampshire Dept. of Correction, 290 F.3d 466, 473 (1st Cir. 2002). For a complaint to pass muster under Fed. R.

Civ. P. 12(b)(6) scrutiny, it must "raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Twombly, 550 U.S. at 555).

## II. Legal Analysis

The alleged facts surrounding BLD's controversy are deemed as admitted and the court will analyze them as if they were true, pursuant to the Fed. R. Civ. 12(b)(6) standard. On March 2005, BLD purchased two properties in the town of Vega Baja from the Puerto Rico Industrial Development Corporation. Docket No. 1 at 9, ℙ 11. BLD mortgaged both properties in favor of BBVA with a senior and a junior lien. Id. ℙ 12 & ℙ 13. Five years after purchasing the properties, BBVA commenced foreclosure proceedings in local court. Id. ℙ 14. Between the years 2011 and 2012, BLD and BBVA reached an agreement to resolve the controversy between them through a judgment by consent. Id. at 9-10, ℙ 15 & ℙ 16. BLD was unable to finalize negotiations for a discounted payoff with BBVA due to the subsequent change of ownership of the judgment from BBVA to Oriental Bank and later to Triangle REO Corp. Id. at 10, ℙℙ 16-18.

A few years later, in September 2016, BLD leased its two properties to co-defendants Perfect Price, Inc., and Perfecto Rivera; the former was a guarantor under the lease. Id. ℙ 19. The lease was amended in February and September 2018. Id. In the year 2018, BLD had been negotiating with Triangle the payoff of the mortgage loan and in the process, representatives of Triangle met co-defendant Perfecto Rivera incidentally. Id. ℙ 20. Beginning December 2018, the tenants stopped paying rent to BLD and remained operating the bakery business. Id. ℙ 21. In May 2019, BLD commenced a collection of monies and eviction case in local court and obtained a judgment in April 2021 that determined that it was owed rents and ordering Perfect Price to vacate the premises. Id. at 14-15, ℙ 49 & ℙ 50.

During the years 2018 and 2021, BLD believes that Perfect Price and Perfecto Rivera teamed with Ramon Clas and Michael Pabon, shareholders of Latin Investment Corp., to negotiate the purchase of the foreclosure judgment from Triangle. Id. at 10, ℙ 22. BLD claims that these parties are directly related through a corporate entity known as La Perfecta, Corp., which has the same address as the properties that were leased to Perfect Price and Perfecto Rivera. Id. at 11, ℙ 25

-3-

& ⁋ 26. In January 2021, Latin Investment filed a motion in the foreclosure case to substitute Triangle as creditor. Id. ⁋ 23. BLD understands that Latin Investment paid Triangle $1,340,000.00 for the local court judgment. Id. ⁋ 27.

BLD alleges that Latin Investment obtained the judgment through funding provided directly or indirectly by Perfecto Rivera, Perfect Price, or La Perfecta. Id. ⁋ 29. According to BLD, Latin Investment has reported to the Puerto Rico State Department assets and capital of only $1,000.00 since its inception in 2018. Id. ⁋ 28. BLD claims that Perfect Price and Perfecto Rivera diverted the rent arrears owed to it to finance the purchase of foreclosure judgment. Id. ⁋ 29. BLD believes that the intention of the defendants was to become owners of the two properties by means of the foreclosure. Id.

While Latin Investment was foreclosing BLD's two properties, Perfect Price and Perfecto Rivera exhausted appellate remedies in the Puerto Rico courts to overturn the collection of monies and eviction judgment entered against them. Id. at 15, ⁋⁋ 51-56. On February 4, 2022, the Puerto Rico Supreme Court denied the final attempt of the tenants to revert the eviction court's judgment. Id. ⁋ 56. On March 4, 2022, BLD moved for an eviction order against these co-defendants. Id. ⁋ 57. On March 10, 2022, the eviction court granted the motion and gave Perfect Price and Perfecto Rivera twenty (20) days to vacate the premises. Id. ⁋ 58. In the meantime, on March 18, 2022, Latin Investment sought an order in the foreclosure case for the transfer of BLD's two lots to itself. Id. at 13, ⁋ 33. On March 23, 2022, Latin Investment executed the judicial sale deeds before a notary public for the transfer of the two properties that it obtained through the judicial auction. Id. ⁋ 34. The next day, BLD filed for bankruptcy, and subsequently notified the filing to the foreclosure court and to the eviction court. Id. ⁋⁋ 35-36. On March 28, 2022, the eviction court stayed the proceedings. Id. at 16, ⁋ 59. The following day, the foreclosure court stayed the proceedings. Id. at 13, ⁋ 37. However, the same day that the foreclosure court stayed the proceedings, BLD claims that that very same court issued "without jurisdiction" an order approving the judicial sale that was conducted in favor of Latin Investment on March 23, 2022. Id. ⁋ 38.

With this backdrop, BLD claims that the defendants, "related among themselves, directly or indirectly, acting in collusion, under the fictitious veil of corporate entities, defrauded [BLD], intervened in bad faith in the negotiations of [BLD] with its secured lenders, stayed the flow of

cash to [BLD] to frustrate its negotiations and means to pay its loans, with the intent to obtain title of the two (2) lots of land, which are [BLD's] main assets." Id. P 39. BLD alleges that it was insolvent while these events took place; that as a consequence it has received less than what it would if it retained the property or sold it to a third party; that the transfer of the properties occurred within the avoidance period; that the transfer hindered, delayed and defrauded the estate and its creditors; and that the defendants colluded in bad faith against BLD by depriving it of its main assets. Id. at 13-14, PP 40-44.

The court will discuss each count separately under the Fed. R. Civ. P. 12(b)(6) standard.

First Count

The first count of the complaint seeks a determination from this court that certain rent monies are property of the estate under § 541 of the Bankruptcy Code.[1] Docket No. 1 at 16. This statute deems rents as property of the bankruptcy estate. 11 U.S.C. § 541(a)(6). According to BLD, it has a local court judgment determining that co-defendants Perfect Price and Perfecto Rivera owe it $204,000 as of 2021. Id. BLD further alleges that this amount has increased and that it has an interest in the proceeds of rent that were never paid to it between the years 2018-2022. Id. at 17. Taking as true BLD's allegation that there is a pre-petition local court judgment that determines that the co-defendants owe it certain amount of rent monies, the first count survives dismissal, because under the Rule 12(b)(6) standard evidence may be offered to prove that these rents constitute property of the estate. Semerenko, 223 F.3d at 173.

Second Count

The second count of the complaint seeks to determine that the two properties that BLD lost in the eve of the filing of the petition are property of the estate. Docket No. 1 at 17. Section 541 provides that property of the estate includes a debtor's interest in property on the date of the filing of the petition. 11 U.S.C. § 541(a)(5). This section cannot revest a debtor "with property lost prepetition, such as through foreclosure and eviction." In re Lagares Santana, Case No. 18-07127, Docket No. 35 at 6 (Bankr. D.P.R., Jan. 24, 2020)(Lamoutte, J.). Under Puerto Rico law, when a judicial sale has been executed and the marshal signs the public deed before the notary, the

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532.

dominium of the real property is transferred to the purchaser. Id. at 9. The case clarifies that the new mortgage law does not change this understanding when it incorporated a requirement of the local court to enter an order confirming the judicial sale, because the judicial sale deed can gain access to the property registry even in the absence of such confirmation. Id. at 10.

At the hearing on the motion to dismiss and the opposition, the Plaintiff stated that it does not dispute the bankruptcy court's reasoning in In re Lagares, thus leaving the court without need to evaluate the necessity of the confirmation of judicial sale order that was entered after the petition date. It follows that these properties are not property of the estate under § 541(a)(1). As of the commencement of the bankruptcy case, these two properties were not owned by BLD because they had been transferred to Latin Investment, pursuant to Article 112 of the Property Registry Act and Rule 51.7 of the Puerto Rico Rules of Civil Procedure. In re Lagares Santana, Case No. 18-07127, Docket No. 35 at 9 (Bankr. D.P.R., Jan. 24, 2020)(Lamoutte, J.)(explaining that when the marshal and buyer execute the judicial sale deed the dominium of real property is transferred and that the statutory requirement of a judicial order confirming the sale does not intend to halt the transfer of property). The complaint alleges that the judicial sale deed was executed the day before BLD filed for bankruptcy. Docket No. 1 at 13, ⁋ 34 & ⁋ 35. Analyzing this statement as true, we arrive to the conclusion that BLD does not have a legal basis and its claim for relief is not plausible. The court dismisses the second count of the complaint under Fed. R. Civ. P. 12(b)(6).[2]

Third and Fourth Counts

The third and fourth counts of the complaint relate to violations of the automatic stay. The filing of the bankruptcy petition creates an automatic stay that is violated when a creditor continues a judicial action to recover a pre-petition claim against a debtor; enforces a judgment obtained pre-petition; takes actions to obtain possession of property of the estate; and creates or enforces a lien against property of the estate, among others. 11 U.S.C. § 362(a). The pleadings indicate that BLD filed for bankruptcy on March 24, 2022, and five days later the foreclosure court entered an order staying the proceedings. Docket No. 1 at 13, ⁋ 35 & ⁋ 37. Notwithstanding, the same day that the foreclosure court stayed the proceedings, it entered an order approving the judicial sale of the two

---

[2] In its opposition to the motion to dismiss, BLD claims that it has an interest in the property under United States v. Whiting Pools, 462 U.S. 198 (1983). Docket No. 54. We do not agree, because the referenced case dealt with an Internal Revenue Service seizure for failure to pay taxes, which is different from a mortgage foreclosure conducted pursuant to the laws and procedures established by the laws of Puerto Rico.

properties to Latin Investment. Id. ℙ 38. BLD contends that the "order approving the judicial [sale] is null and void." Id. at 19, ℙ 81. It further alleges under both counts that Latin Investment through its principals "did not request the halting of the entry of the order approving the judicial sale of the property." Id. at 19 & 21, ℙ 82 & ℙ 91. Under the third count, it complains that Latin Investment allegedly filed the judicial sale deed at the Property Registry for recordation on the same day the bankruptcy petition was filed. Id. at 19, ℙ 82. The fourth count claims that Latin Investment and its principals willfully violated the stay because they did not withdraw the motion to approve the judicial sale. Id. at 21, ℙ 91.

In the First Circuit, a judicial order entered after the filing of the petition is void and has no legal effect without the necessity for judicial intervention. Triangle Cayman Asset Co. v. LG & AC, Corp., 2022 U.S. App. LEXIS 29561 (1st Cir. 2022)(judgments entered by the district court after the filing of the bankruptcy petition were void)(citing In re Soares, 107 F.3d 969, 975-76 (1st Cir. 1997); I.C.C. v. Holmes Transp., Inc., 931 F.2d 984, 987-88 (1st Cir. 1991)). The defendants admit paragraph 38 of the complaint, which states that the order approving the judicial sale was issued without jurisdiction. Docket No. 45 at 3. If we take as true that Latin Investment "move[d] the state court for an order approving the transfer of the two lots to itself" before the filing of the petition, we cannot arrive at a willful violation of the automatic stay scenario because the automatic stay was not in effect. Docket No. 1 at 13, ℙ 33. BLD's allegation that the stay was violated because of Latin Investment, Ramon Clas and Michael Pabon's inaction and failure to withdraw a motion seeking the approval of the judicial sale is without merit. BLD had notified the foreclosure court of the filing of the bankruptcy petition and as such, Latin Investment did not have to take subsequent action regarding its pre-petition motion. Id. ℙ 36. Moreover, the presentation of the judicial sale deed at the property registry cannot be construed to be a violation of the automatic stay given that we have expressed that after the judicial sale deed was executed, the two foreclosed properties ceased to be property of BLD. The motion to dismiss as to the third and fourth counts is granted.

Fifth Count

The fifth count of the complaint seeks to avoid the transfer of BLD's foreclosed properties as a preferential transfer under 11 U.S.C. § 547. BLD alleges the elements of a preference, claiming that Latin Investment was a creditor; that it foreclosed on its properties on account of an antecedent

-7-

debt; that it was insolvent; that the foreclosure occurred within 90 days before the filing of the petition; and that Latin Investment has received more than it would have received under a chapter 7 case. Docket No. 1 at 23, ¶¶ 103-108. BLD did not specify what amount Latin Investment received that is more than it would receive in a hypothetical chapter 7 case. Id. at 22-23.

There is a debate as to whether a fully secured creditor receives a preference when it purchases its collateral at a foreclosure sale for less than its fair market value. 5 Collier on Bankruptcy ¶ 547.03 n.125 (16th ed. 2022). The majority view holds that secured creditors do not receive more under the hypothetical chapter 7 liquidation scenario because the collateral is unavailable to the unsecured creditors. Garner v. Knoll, Inc. (In re Tusa-Expo Holdings, Inc.), 811 F.3d 786, 792 (5th Cir. 2016). The minority view contends that a chapter 7 trustee can sell collateral for a fair market value, which results in more distribution to the unsecured creditors and the secured creditor receives payment only to the amount of its claim. Whittle Development, Inc. v. Branch Banking Trust Co. (In re Whittle Development, Inc.), 463 B.R. 796, 802 (Bankr. N.D. Tex. 2011). A bankruptcy court in the Northern District of Texas determined that the debtor's preference claim was facially plausible because "a chapter 11 debtor-in-possession can avoid a pre-petition foreclosure on the grounds that the foreclosure constituted a preferential transfer, even though the foreclosure complied with state law and was non-collusive." Id. at 802-03. This approach was common prior to the Supreme Court's decision in BFP v. Resolution Trust, 511 U.S. 531 (1994). Jacob Ryder, Comment: It's Worth Whatever Someone Paid for It: How Courts Have Misinterpreted BFP's Reasoning, 125 Dick. L. Rev. 767, 779 (Spring 2021)(citing In re Smith, 21 B.R. 345, 352 (Bankr. M.D. Fla. 1982)(finding the mortgage foreclosure sale constituted a preference under § 547); In re Park North Partners, Ltd., 80 B.R. 551, 555 (N.D. Ga. 1987)(remanding the case for a determination of whether the creditor received more than he would have under a chapter 7 bankruptcy and concluding that the mortgage foreclosure sale would be subject to avoidance if the elements of § 547 were satisfied); In re Winters, 119 B.R. 283, 285 (Bankr. M.D. Fla. 1990)(finding the foreclosure sale satisfied the elements of § 547 when comparing the sale price to the fair market value of the asset)).

This court declines to adopt the minority view and instead sides with the reasoning that when collateral has been used as the source of payment for the antecedent debt there is no preference action available. 5 Collier on Bankruptcy ¶ 547.03 (16th ed. 2022)(citing Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, LP), 171 F.3d 249 (5th Cir. 1999)). The El Paso

Refinery test is used by courts to circumvent the fifth prong of § 547 by observing if "a creditor receives a transfer which, by its very nature, would not have been available to any of the other secured or unsecured creditors, [because] it could never receive 'more' under the hypothetical Chapter 7 liquidation analysis." Garner, 811 F.3d at 792. To strengthen this view, certain courts have relied on the Supreme Court's opinion in BFP where it was held that "a regularly conducted non-collusive foreclosure sale was not a fraudulent conveyance."[3] 5 Collier on Bankruptcy ¶ 547.03 n.125 (16th ed. 2022)(citing BFP, 511 U.S. at 545).

The fair market value approach cited by the minority view has been frowned upon by the United States Supreme Court at least in the context of fraudulent transfers under § 548. BFP, 511 U.S. at 538. The Supreme Court determined that "'fair market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale." Id. Under BFP, forced sales do not meet the conditions of a fair market for purposes of value and as such we cannot side with the minority view's approach. BFP, 511 U.S. at 538. In a forced sale context, "the lien creditor does not 'receive more' for purposes of § 547(b)(5) than it would in a chapter 7 liquidation" because the secured creditor is not receiving more, given that the property's value is the price received in the forced sale. Veltre, 562 B.R. at 894 (citing In re Rocco, 319 B.R. at 416); Jacob Ryder, Comment: It's Worth Whatever Someone Paid for It: How Courts Have Misinterpreted BFP's Reasoning, 125 DICK. L. REV. at 789-90 (Spring 2021)(citing Veltre, 562 B.R. at 894). Moreover, Puerto Rico's Property Registry Act provides that the minimum bid at foreclosure is the amount stipulated in the mortgage deed. 30 L.P.R.A. § 6141. No allegation is made that this provision of Puerto Rican mortgage law was infringed. We also observe that § 547's legislative history indicates that courts ought to look at the amount that will be received by the members of the same class of which the creditor is a member. House Report No. 95-595, 95th Cong., 1st Sess. 373 (1977); Senate Report No. 95-989, 95th Cong., 2d Sess. 87 (1978).[4] Thus, when the transferred property would not be available to any other secured creditor, the "preferred" lien creditor does not receive more

---

[3] In Veltre v. Fifth Third Bank (In re Veltre), 562 B.R. 890, 893-94 (Bankr. W.D. Pa. 2017), the United States Bankruptcy Court for the Western District of Pennsylvania followed its precedents in In re Pulcini, 261 B.R. 836 (Bankr. W.D. Pa. 2001) and In re Rocco, 319 B.R. 411 (Bankr. W.D. Pa. 2005)(affirmed by Rocco v. J.P. Morgan Chase Bank, 255 F. Appx 638 (3d Cir. 2007)(unpublished opinion)), which determined that under BFP, a valid, legal, and non-collusive foreclosure cannot be avoided under § 547.

[4] Courts must focus on the relative distribution between classes as well as the amount that will be received by the members of the class of which the preferee is a member. House Report No. 95-595, 95th Cong., 1st Sess. 373 (1977); Senate Report No. 95-989, 95th Cong., 2d Sess. 87 (1978).

under the hypothetical chapter 7 liquidation analysis. Garner, 811 F.3d at 792. Consequently, the motion to dismiss is granted as to the fifth count.

Sixth Count

The sixth count of the complaint seeks to avoid the foreclosure as a fraudulent transfer under § 548. When a transfer is made by a debtor with the intent to hinder, delay, or defraud creditors, the trustee may seek avoidance of such action. 11 U.S.C. § 548(a)(1)(A). The trustee may also avoid transfers as fraudulent when a debtor received less than equivalent value in exchange for such a transfer. 11 U.S.C. § 548(a)(1)(B). BLD avers that its two properties were acquired "in a fraudulent manner" and that it did not receive value for the transfer. Docket No. 1 at 24 & 26, ₱ 115 & ₱ 118(m). It further alleges that the foreclosure of its property is "plagued with badges of fraud." Id. at 25, ₱ 118. According to the complaint, the defendants colluded to stop paying rents to BLD so they would use those monies to purchase the foreclosure judgment against BLD and acquire the properties through the foreclosure procedure's judicial sale. Id. at 27, ₱ 119. BLD believes that co-defendants Ramon Clas, Michael Pabon and Perfecto Rivera provided funds to co-defendant Latin Investment to acquire the foreclosure judgment from Triangle because this corporate entity has no meaningful reported assets.[5] Id. at 25-26, ₱ 118. BLD also points out that Latin Investment presented in the foreclosure proceedings an appraisal of the two properties that was prepared for Perfecto Rivera. Id. at 26, ₱ 118.

The norm established by BFP was that § 548 cannot avoid a "non-collusive" foreclosure. BFP, 511 U.S. at 545. In the present case, BLD alleges that there is collusion. As such, we must analyze what is a collusive foreclosure. Collusion has been defined as "[a]n agreement to defraud another or to do or obtain something forbidden by law." Collusion, BLACK'S LAW DICTIONARY (11th ed. 2019). A bankruptcy court in the Northern District of New York determined that a collusive foreclosure inquiry "must be on the sale itself, as opposed to events leading up to the commencement of the foreclosure." In re Bennett, 154 B.R. 140, 147 (Bankr. N.D.N.Y. 1992). The court also expressed that collusion manifests itself in "bid rigging or some other form of price

---

[5] BLD alleges that Ramon Clas and Michael Pabon are officers and shareholders of Latin Investment Corp. Docket No. 1 at 8, ₱ 6 & ₱ 7. BLD alleges that the nexus between co-defendant Perfecto and the previously mentioned co-defendants is a corporation called Productos La Perfecta Corp. that is also a co-defendant in this complaint. Id. at ₱ 8. Ramon Clas is resident agent for La Perfecta and Perfecto Rivera is the President of the corporation. Id.

fixing." Id. Another bankruptcy court has also determined that there is collusion when the debtor and the lienholder have arranged the foreclosure. In re Hitzel, 2004 Bankr. LEXIS 1036, 4* (Bankr. W.D.N.Y. Jul. 20, 2004)(a foreclosure is avoidable when the debtor and the lienholder have colluded). Taking BLD's allegations as true that the defendants planned to drive its two properties into a foreclosure sale does not amount to the collusion bankruptcy courts look for in a collusive foreclosure. BLD does not allege that during the foreclosure the bid was rigged or that the price was fixed. Rather, the facts indicate that a foreclosure was conducted following Puerto Rico law. These alleged facts amount to a non-collusive foreclosure situation and consequently the Supreme Court's ruling that § 548 cannot avoid these types of foreclosure prevails and the sixth count is dismissed.[6] BFP, 511 U.S. at 545.

Seventh Count

The seventh count seeks recovery under § 550. This section allows the trustee to recover property that was avoided under §§ 547 or 548. A discussion of this count is not warranted because it is contingent on the fifth and sixth counts. Both of those counts have been dismissed and consequently, the seventh count is also dismissed.

Eight Count

The eighth count of the complaint seeks a turnover of alleged rent moneys owed by Perfect Price, Perfecto Rivera, and Latin Investment under § 542. This count survives dismissal because if BLD prevails in declaring the rent monies are property of the estate under the first count, it may then request their turnover. The eighth count survives dismissal under Fed. R. Civ. P. 12(b)(6).

Ninth Count

BLD claims that the defendants tortiously harmed an agreement it had with Triangle, the previous foreclosure judgment holder. BLD regards the tortious conduct as an interference with a contractual obligation. BLD further states that to prevail in a third party's tortious interference

---

[6] We do not find that the application of Yourelo is warranted in this case, because it deals with a tax foreclosure under Massachusetts law. Yourelo Your Full-Service Relocation Corp. v. City of Revere (In re Yourelo Your Full-Service Relocation Corp.), 2020 Bankr. LEXIS 3287 (Bankr. D. Mass. Nov. 23, 2020). The court cited a case that stated that "tax foreclosure cases are unlike any other in certain important respects." Id. (citing Buk Lhu v. Dignoti, 431 Mass. 292, 296, 727 N.E.2d 73 (2000)). As such, the facts in Yourelo are inapplicable to the instant controversy.

of a contractual obligation, a plaintiff must prove the (1) existence of a contract which is interfered by a third party; (2) tortious conduct with knowledge of the contract's existence; (3) a damage; and (4) that the damage is a consequence of the tortious conduct. Docket No. 1 at 30, ¶ 148 (citing Gen. Office Prods. Corp. v. A.M. Capen's Sons, 115 P.R. Dec. 553 (1984)). To satisfy the first and second prong, BLD alleges that it had "an agreement with Triangle to [negotiate] the discounted pay off for the judgment" and that the defendants tortiously interfered with this agreement by withholding BLD's rent and using those monies to purchase the judgment. Id. at 30, ¶¶ 150-152. Regarding the third prong, BLD avers that it has been harmed because it lost rental income and eventually lost its two properties. Id. at 31, ¶ 155. According to BLD, the damages it has suffered are a consequence of "the direct actions of Perfect Price, Mr. Perfecto Rivera, Latin Investment, Mr. [Clas] and Mr. Pabon" who used Latin Investment to purchase the judgment, used the judgment as a credit in the foreclosure sale, and allowed Perfect Price and La Perfecta to remain operating from within the foreclosed properties. Id., ¶ 156 & ¶ 157.

Taking BLD's pleaded facts as true, the ninth count of the complaint survives. The complaint pleads that there was "agreement" between BLD and Triangle to purchase the foreclosure judgment.[7] BLD also pleads that the defendants had knowledge of the agreement and notwithstanding they interfered with it by purchasing the foreclosure judgment. Because of this alleged interference, the harm suffered by BLD was in the form of loss of rental income and loss of its two properties through the foreclosure sale. Lastly, BLD stated that the damages spring from the direct actions of the defendants. The court must draw all reasonable inferences in favor of BLD. Estate of Soler, 63 F.3d at 53. At this procedural stage, the court does not evaluate whether BLD will prevail, but rather if evidence can be offered to support its claim. Semerenko, 223 F.3d at 173; Gorski, 290 F.3d at 473. The complaint as plead, raises "a right to relief above the speculative level." Twombly, 550 U.S. at 555. Consequently, the motion to dismiss as to the ninth count is denied.

---

[7] Agreement is defined as "[a] mutual understanding between two or more persons about their relative rights and duties regarding past or future performances." Agreement, BLACK'S LAW DICTIONARY (11th ed. 2019).

-12-

Tenth Count

The tenth count of the complaint seeks the piercing of the corporate veil of the corporate defendants. BLD alleges that the corporate defendants are alter egos of the individual defendants and that they all colluded to deprive it of its two properties "illegally and fraudulently." Docket No. 1 at 31-32, ¶ 161. BLD then states that the corporate defendants do not follow corporate formalities and that they do not comply with the principle of separateness between the shareholders and the corporate structure. Id. at 32. BLD further claims that the individual defendants have used the corporate defendants to achieve fraudulent and illegal actions against it. Id. at 32-33, ¶ 169. BLD concludes by claiming that the court must pierce the corporate veil to avoid an injustice, given that the corporate defendants lack meaningful assets and as such, the shareholders must be held liable for the alleged illegal actions by these corporations. Id. at 33, ¶ 175.

The corporate veil can only be pierced when the corporate structure is used to defeat public policy, to justify injustice, to protect fraud and to defend crime. South P. R. Sugar Corp. v. Junta Azucarera, 88 D.P.R. 43, 55 (1963).[8] Corporations are governed by state law and in Puerto Rico, the corporate entity is deemed a distinct legal entity from that of the shareholders. Cruz v. Ramirez, 75 D.P.R. 947, 954 (1954).[9] If the corporation is merely an alter ego or a business conduit of their only shareholders and they receive all the profits, then they may be found liable to avoid fraud or an injustice. Id. It is unusual for courts to disregard the corporate form. Aoki v. Atto Corp., 323 B.R. 803, 811 (1st Cir. B.A.P. 2005). The legal standard for piercing the corporate veil is imprecise and the conditions under which it is pierced vary according to the circumstances. Crane v. Green & Freedman Baking Co., 134 F.3d 17, 21-23 (1st Cir. 1998). The party that moves to pierce the corporate veil "has the burden of producing 'strong and robust evidence' that the corporate entity should be disregarded." Situ v. O'Neill, 124 F. Supp. 3d 34, 50 (D.P.R. 2015)(citing Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980)).

---

[8] Official translation found at 1963 PR Sup. LEXIS 307.

[9] Official translation found at 1954 PR Sup. LEXIS 220.

-13-

The piercing of the corporate veil is a difficult task, but because it is an equitable remedy that depends on various factors and no single factor is dispositive. NetJets Sales, Inc. v. RS Air, LLC, 2022 WL 1284012 *4 (9th Cir. B.A.P. Apr. 26, 2022). Dismissal under Fed. R. Civ. P. 12(b)(6) is only appropriate if the complaint fails to allege any of the facts that supports the factors. Id. "Factual allegations, [that if] taken as true, can establish some of the factors which courts" rely upon under state law to pierce the corporate veil are sufficient to survive a motion to dismiss for failure to state a claim upon which relief can be granted." Id. (finding that the bankruptcy court abused discretion in dismissing piercing of corporate veil plea when the plaintiff had alleged facts, such as inadequate capitalization; ignorance of corporate formalities; and functioning as a façade).

In the present case, BLD has plead that the corporate defendants have been used to advance fraudulent and illegal objectives against it. Docket No. 1 at 32. It also alleges that the corporate formalities are not being followed and that there is no separation between the corporate entities and their shareholders. Id. BLD further stated that Perfect Price, Latin Investment and La Perfecta do not have meaningful assets and as such it could not have purchased the foreclosure judgment from Triangle. Id. at 33.[10] The complaint also attached Latin Investment, Perfect Price, and La Perfecta's annual reports to the Puerto Rico State Department, public documents that are readily available on the internet, that show the assets and liabilities of these corporate defendants. Id. at 36-44, Exhibits 1a-1c. These allegations, taken as true, suffice to put the court in a position to evaluate if the factors to pierce the corporate veil have been met. Under the Fed. R. Civ. P. 12(b)(6) standard, the issue is not whether BLD will ultimately prevail, but whether it can offer

---

[10] "Lack of meaningful assets is one of the factors that is often observed by courts evaluating the piercing of a corporate veil and under this factor the courts observe the amount of resources that the shareholders have contributed to the corporation at the moment operations initiated." Diaz, Carlos E., CORPORACIONES: TRATADO SOBRE DERECHO CORPORATIVO, 135 (2d ed. 2016)(translation ours)(citing Gevurtz, Franklin A., Piercing: An Attempt to Lift the Veil of Confusion Surrounding the Doctrine of Piercing the Corporate Veil, 76 OR. L. REV. 853, 889 (1997)).

enough evidence to back its claim that the corporate defendants are conduits of their shareholders.[11] Consequently, the motion to dismiss as to the tenth count is denied.

### III. Conclusion

The defendants' motion to dismiss (Docket No. 45) is granted as to the second, third, fourth, fifth, sixth and seventh counts and is denied as to the first, eighth, ninth, and tenth counts of the complaint.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of December, 2022.

_____
MILDRED CABAN FLORES
United States Bankruptcy Judge

---

[11] To find that a corporation is an alter ego as of its own does not create a cause of action because alter ego corporations are not themselves illegal. Diaz, Carlos E., CORPORACIONES: TRATADO SOBRE DERECHO CORPORATIVO, 141 n.82 (2d ed. 2016)(citing William Meade Fletcher, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, § 41.10 (perm. ed. rev. vol. 2014)). "One who seeks to disregard the corporate veil must show that the corporate form has been abused to the injury of a third party." Id.

-15-